- The BRAD BLOG - http://www.bradblog.com -

# Fort Worth Paper Picks up on BRAD BLOG Whistleblower Story

Posted By Brad On 25th March 2006 @ 11:56 In Uncategorized | 7 Comments

*Blogged by Brad on the Road...*

The Fort Worth [1] *Star-Telegram* picks up on [2] our previous report about Hart InterCivic / Tarrant County, TX election software whistleblower William Singer.

Does the *"Startlegram"* give any love to [3] The BRAD BLOG in their article? Despite an hour or two on the phone with them after they called for deets and a hook-up with our source last week? Not a jot.

But we're not in it for the love. We're in it for the big bucks.

---

Article printed from The BRAD BLOG: **http://www.bradblog.com**

URL to article: **http://www.bradblog.com/?p=2607**

URLs in this post:
[1] *Star-Telegram* picks up: **http://www.dfw.com/mld/dfw/news/14181878.htm**
[2] our previous report: **http://www.bradblog.com/archives/00002542.htm**
[3] The BRAD BLOG: **http://www.BradBlog.com**

Click here to print.

John.Conyers@mail.house.gov

Dear Congressman Conyers,

Pursuant to a suggestion on The Brad Blog (http://www.bradblog.com/archives/00002542.htm), I am writing this open letter to you in the hopes that you can prompt a congressional investigation into possible voting machine certification fraud in Ohio. I believe such an investigation is my last recourse given the Ohio Secretary of State's (Kenneth Blackwell) failure to investigate serious complaints and his persistent lies regarding vendor e-voting certifications (for complaint details see the link provided above). Since you seem to have more interest in a sound election system in Ohio than its own state offices and representatives, I am writing to you directly hoping you can have some influence at either the federal or Ohio state level to prompt a real investigation. Currently, not only has the Secretary of State's office (and the Ohio Attorney General) refused to investigate my complaint, and been unwilling or unable to explain why, but I have reason to believe that Blackwell's office may be guilty of far worse than incompetence. I have reason to believe that Blackwell (or his office) has:

1. Preselected electronic voting vendors based on private criteria, thus unfairly excluding many vendors, as he attempted to do with Sequoia.

2. Provided information to selected vendors in advance to help them pass (or appear to pass) the Ohio security testing (as done by Infosentry and Compuware).

3. Lied repeatedly about Hart Intercivic's participation and status in Ohio. Contrary to comments by Blackwell's office, Hart was not only certified but participated in an election in multiple Ohio counties.

4. Inappropriately granted certification to Hart Intercivic.

5. Engaged in an ongoing pattern of inappropriate, incompetent "certification" processes that no reasonable person would find acceptable and serves only to create false confidence among voters and promote electronic voting without proper regard for any possible negative consequences.

6. Knowingly tolerated certification violations by completely failing to follow up on certification claims, configuration details, and version information as used in actual elections in Ohio counties.

I believe an investigation is warranted, and clearly Blackwell's office cannot perform such an investigation, even if they could be motivated to conduct an investigation of any kind. Since the Ohio Attorney General has also declined, and even if we credit these problems to pure incompetence and not more legally serious explanations like bribery,

the only hope for positive change seems to lay with Congressmen such as yourself. Thus far Ohio seems impervious to any attempt to question its blind pursuit of electronic voting as a magical, self-supervising solution where even major problems can simply be programmed away. I hope you agree that we all deserve better, and that the rain of HAVA money should not delude vendors into believing that there will be no accountability.

Due to confidentiality agreements I cannot publicly be more specific about the above allegations or original complaints outside of a formal investigation, which I hope you have the interest and influence to prompt at some level.

Sincerely,

William Singer

cc: The Brad Blog


P.S.
Please consider sponsoring a federal law barring confidentiality from applying to election processes and procedures that are unrelated to patents or trademarks. I believe that such confidentiality restrictions are an anathema to democracy and serve no reasonable purpose, but only create and sustain an environment of inappropriate secrecy, conceal incompetence, and promote wrongdoing. Election vendors have long claimed they serve County Government and as such problems in procedures, software changes, election problems, etc. are all the responsibility of the County officials to reveal, or that such issues represent corporate secrets which would only "needlessly" concern the public. There was a time when, in serving Hart Intercivic, I believed in and supported this argument. But I quickly came to find that "needlessly" was a term that the election vendors and County officials were too biased to properly, clearly, or consistently define and reflected their desire to cover up problems rather than any lack of ability to communicate complex issues to the voting public. And their whole concept of vendor service to the "County", as though it were another corporation, is based on a false premise. The County is not an independent entity like a corporation which has no well defined members and can only exist with specific legal protections. The County represents the public directly; it has no right to conceal information from voters with respect to elections and absolutely no good reason for ever doing so, nor does any vendor serving the public in elections, outside, perhaps, of specific patents, trademarks, or specific corporate rights. Any issues related to the preparation, certification, conduct, problems, changes, or reporting of an election is not just due the public, it is owed to us.


P.P.S.
Aside from the "Blackwell specific" issues above, there are serious questions to be asked regarding the current state of Ohio's election readiness given the questionable competence and possible malfeasance of Blackwell's office. To assist in any general

investigation into the real Ohio elections environment (or any state, for that matter) I have some proposed questions and avenues of investigation which may be helpful, based on my experience with these offices, vendors, and election preparation.

Since Blackwell's office has lied about certification and seems to grant "provisional" certification on a whim to "friendly" or "acceptable" companies, a common industry practice, an investigation into the true certification process and state of such certifications may yield valuable, if unpleasant, results. These are the questions that are not being asked, and any Secretary of State would rather you didn't know to ask.

A. What are the current software and hardware versions actually in use in each county versus the versions currently on record with the Secretary of State (S.O.S.)? Have any patches been applied which may not have visibly changed, or not changed, version numbering?

B. Which of those versions are considered "provisional" or were provided "quick" certification, versus "formal" certification, and what is the schedule for moving all such informal certifications into the formal category?

C. Who is supposed to investigate, at a county level, to verify companies are using certified versions, and where are those reports? If they don't exist, how often are such checks supposed to be conducted and by whom?

D. When has provisional / quick certification been granted, to whom, and when, or did, the S.O.S. follow up to fully certify such products? Are there occasions where upgrades "negated" the need to formally certify older products, despite their having been actually used in elections?

E. What is the exact nature of the technical review and investigation conducted for the certifications, if such a review even happens, and who are the personnel competent for and assigned to such processes? Do the same people conduct every review, do so regularly, and provide reports to that effect? Where are those reports?

F. How often are election vendors simply being taken at their word when it comes to granting any certifications, especially those qualified as provisional or "quick", or for "limited" changes or "emergency" fixes?

G. Does the S.O.S. have a list of dates and times when voting machines were sent out of state or even out of country for repair or even "vote recovery" as practiced by companies like Hart Intercivic?

H. When vendors have patched software what is the county level notification process, to be certain there was no impact to elections the S.O.S. may not have been aware of, such as limited contract elections? Where is the list of elections affected by software bugs, or any public testing that was subsequently invalidated by such software bugs?

I. When hardware failures due to poor manufacturing controls have resulted in failed election machines, have the vendors compensated the counties not only for the machines, but the election problems that resulted? What is the amount of such reparations, and what is the overall failure rate statewide for electronic vendors?

J. How has the state verified and checked upon the vendor's internal testing procedures to be certain that all election software has been tested prior to being used in elections, despite certification? Which software and what vendors have provided totally untested software for use in elections, despite being certified by the S.O.S. and multiple "independent" authorities (corporations paid to "certify" products)?

K. What specific tests does the S.O.S. office run before certifying software, and does the S.O.S. allow vendors to "show" the software, or does qualified S.O.S. staff actually do any testing themselves?

L. Are any of your current staff former employees of vendors, certifying authorities, or are any of their staff your former employees, and are there any other conflicts of interest that the public should know about? If you have hired or outsourced a company to perform certification tests, what is the relationship of those people or companies to the S.O.S. office?

This open letter is a response to the recent (3/24) Fort Worth Star-Telegram's article (http://www.dfw.com/mld/dfw/news/local/14185887.htm) where a Tarrant County official describes me, a former employee who warned clearly and specifically about probable upcoming election failures, as "disgruntled".

Unfortunately the Star-Telegram did not contact me for further comment and the article in the newspaper may be a bit misleading; especially since the paper also failed to print or direct it's readers to the complaints I originally submitted, though the complaints themselves are public record (as are all complaints to the Secretary of State, to see mine conveniently check here: http://www.bradblog.com/archives/00002542.htm). Hart Intercivic and Tarrant County have both adopted the same modern legal defense of shouting "disgruntled" loudly and repeatedly, in the hopes it will stave off an investigation or real public interest. I would like a chance to respond because I believe the more the details of these complaints are concealed, the more problems Tarrant and other Hart Intercivic (Hart) customers are going to experience.

This was not the only election failure I predicted. Did I really "predict" this failure? It's a rather bold claim, but if you examine my original complaints you will see that I noted testing that was done improperly, that Tarrant and Hart had a history of making election night on-the-fly report changes (which obviously could not possibly have been tested as the law requires or common sense dictates), that such reporting changes were not documented(!), and that both organizations have a history of concealing problems. Sound like a recipe for "Hart report failure causes election woes in Tarrant" as some have described their recent problems? And if you read over my original complaints it should be clear that this election failure is hardly the first or last failure I am expecting - not the first because there is no telling how many problems Hart and other counties are hiding, and certainly not the last because they will not learn and feel invulnerable to outside pressure. I think the Star-Telegram owes it to the voting public to publish those complaints and let people decide for themselves how worried they are. Too many people, like vendors and election officials, are treating the public like dangerously opinionated children who must be sheltered against any ability to take meaningful action.

However, if the charge from Hart and Tarrant that I am "disgruntled" has merit then my complaints might be more easily dismissed. So I would appreciate a moment of your time to discuss this clumsy attack on my professional reputation. With a few moments of consideration I think you will find that the competence failures of Hart and the Tarrant election department extend beyond elections. Gayle Hamilton makes one glaring error where she says, in contrast to comments by Hart, "She said he came highly recommended from Hart InterCivic." Gayle accidentally tells the truth here, blowing Hart's story out of the water, and demonstrating why, despite many years of experience as the assistant administrator, she is being passed over for another election administrator from Fort Hood (where Hart has strong ties as well). Hart may want an election administrator who can keep their story straight, and they seem to have enough pull at Tarrant County to get a friendly election administrator appointed over Gayle. One wonders just how deep these inappropriate ties between vendor and county really go, and

how long before confidentiality agreements are not enough to spackle over the crumbling facade of the election industry.

And if I may respond to Gayle directly before continuing...the article, if you are quoted accurately, says "I don't think he was here long enough to know what our processes were,". I was there long enough to know they were wrong, and it didn't take me years to identify multiple, serious, criminal, negligent, and grossly incompetent procedures and management that so disturbed me I left a secure, well paying job in a difficult economy. I left prior to the election because I refused to sign my name to the election, and left abruptly because the law requires an election programmer be present and sign off on the election. I left with enough time for Tarrant to replace me prior to the election, and bring my replacement at least minimally up to speed. It was tragic, even devastating for me, but rather more considerate of the law and voters than others have demonstrated. But this comment by Gayle is rather silly, since having worked at Hart I was quite familiar with many elements of both Texas election law and had worked with Tarrant County repeatedly (and I saved their bacon more than once). I knew some of their technical election procedures better than Gayle, and only accepted the job because I had no idea what terrific ugliness was really brewing under the surface.

To return to the charge of being "disgruntled", my handy dictionary defines this as being "unhappy" and "concerned". It sounds like many thousands of people across the nation are "disgruntled" about the election problems associated with electronic voting in its current incarnation. But that is not how the term is being used by modern business in the "attack the whistleblower" defense. In that sense I believe "disgruntled" means an employee holds some kind of personal grudge, a personal sense of being wronged, and becomes willing to deliberately damage the company out of a desire for vengeance. And in that sense I am not disgruntled with either Hart or Tarrant County and never was. I was well paid and very well treated compared to many other employees. I loved my job at Hart Intercivic, wanted to love the job at Tarrant County, and would gladly have kept either position if the respective organizations had exhibited the slightest real concern and willingness to address fixable, if troubling, problems. But I am not asking anyone to simply take my word for it. I have offered to take lie detector tests, an offer you will not get from Hart Intercivic or Tarrant officials. Further, I rely simply on the good sense of the public in evaluating the available information:

1. Hart has recently claimed I was fired (untrue, I resigned and gave several weeks notice). Tarrant County (elections) and Hart Intercivic are very...very close. Does it seem likely Tarrant would hire a disgruntled, fired Hart employee to a senior staff position as their election programmer, the only such programmer, a fundamental and critical role in that organization?

2. Hart and Tarrant have claimed I was disgruntled, and yet neither can produce any documentation suggestive of any reprimand or any criticism of my work, attitude, effort, or competence (I know because no such things exist, and Gayle lies when she says they were unhappy with me, unless she means after I submitted complaints to the Secretary of State). Aside from Gayle's recent slip noted above, would I have held a crucial position

at Tarrant or been the sole support person at Hart Intercivic for months if they were leery of my dedication, ability, or willingness to save their elections on demand?

3. According to Gayle Hamilton I "wasn't there long enough to know their procedures", so how was I there long enough to become disgruntled? I didn't like the coffee? Does it seem plausible that I left a good job, a secure future in a specialized industry with one of the largest and most looked to counties in the nation, on some kind of whim?

4. The formal complaints I submitted to the Texas (and Ohio) Secretaries of State should reveal my frothing-at-the-mouth "disgruntled" nature, if that charge is true. In reading these complaints I think you will take away a different impression; a sense of my great sorrow and disappointment in having to submit such charges, the losses that I experienced in voluntarily leaving to highlight the serious and real concerns I had, not the least of which was the loss of a close friend, and my persistent hope that these organizations would make different choices. There is no anger, or suggestion of "mistreatment", or desire to harm either organization for selfish purposes, but rather a desire to help turn back an industry headed far down a dangerously unethical path. Even my confidential resignation letters, though they typically addressed totally separate issues, did so explicitly, and were written more to the actual employees present and those issues they could and should follow up on themselves, stress the idea that I was hopeful of change and for better times ahead, and wished the staff well.

5. If I was disgruntled, why did I wait for six months prior to submitting such complaints? If I was so personally angry or distraught why do we not see immediate and wild charges being leveled? Quite simply, I waited to allow for these organizations to make internal changes on their own. I believe in allowing a chance for others to change for the better, and I believe I owed them such an opportunity.

If any observer should choose to believe the corporation(s) and government staff arbitrarily I cannot blame them, as it seems both safer and less troublesome to close your eyes and ears to these problems. But in thinking through what little information you have available to you, I think you are likely to draw more reasonable and more troubling conclusions. Someone is hiding a lot of somethings...and I'm not the one who just had a major election meltdown. Sometimes the proof, and truth, is in the vanishing votes.


cc: Star-Telegram
Dallas Morning News
The Brad Blog
VotersUnite.org
ABC News
Raw Story

## Hart InterCivic Whistleblower Warned of Texas, Ohio E-Voting 'Fraud' Concerns in 2004!



By Brad Friedman, The Brad Blog
March 13, 2006

**100,000+ Votes Were Errantly Added by Hart Machines in a Single County in Last Tuesday's Primary via Flawed, Paperless 'eSlate' Touch-Screen System!**

**Former Hart Employee, Tarrant County TX Election Worker Notified State, Legal Authorities in 2004 About Serious Voting Machine Problems, Procedures...All Warnings and Complaints Ignored**

*This exclusive article was posted on **The Brad Blog**. It is reposted here with permission of the author.*

Continuing in an exclusive **BRAD BLOG** series of Voting Machine Vendor and Election Fraud whistleblowers, another insider, from yet another voting machine company, has now come forward to reveal a myriad of known problems inside both the company and in several states and counties with whom they do business.

During last Tuesday's Primary Election in the state of Texas, scores of "computer glitches" -- as voting officials and electronic voting machine vendors like to refer to them -- **were revealed occurred across the state**. Many of those "glitches" occurred on electronic voting equipment manufactured and supplied to various counties in Texas by the Hart InterCivic company.

One such "glitch" occurred in Texas' Tarrant County, which encompasses Fort Worth. That "glitch" resulted in some 100,000 votes being added to the result totals across the county's paperless Hart-Intercivic "eSlate" touch-screen voting system.

Election Officials in Tarrant claim they didn't look into the problems on Election Night as the problem emerged because, **as reported by the *Star-Telegram* last week**, "they were dealing with a new system, new procedures and some new equipment."

**The BRAD BLOG** can now report, however, that according to a Hart InterCivic company whistleblower -- who also happened to have later worked as an "election programmer" in Tarrant County -- the problems with Hart InterCivic's systems in Tarrant County, Texas and elsewhere are not new at all. Not by a longhorn long shot.

Letters sent by William Singer of Fort Worth, a former Hart InterCivic "technical specialist" and Tarrant County election worker, to state officials back in July of 2004 warned of exactly such problems. The letters, obtained and published here for the first time exclusively by **The BRAD BLOG**, reveal that serious problems and concerns of possible election system meltdowns were already apparent with the Hart machines in Tarrant County long ago. However, the warning letters were all but ignored by both election officials and even state law enforcement officials.

The "glitch" in last Tuesday's primary, as reported the *Star-Telegram*, "caused Tarrant County to report as many as 100,000 votes in both primaries that never were cast." After the problem was discovered, they report, "the local turnout [dropped] from a possible record high of about 158,103 voters to about 58,000."

A review of several notarized letters sent by Singer to officials in both Texas and Ohio in 2004 warned of fraudulent activities, buggy software and hardware, dysfunctional testing and development procedures, unsecured working environments and possible criminal behavior by both Hart InterCivic and Election Workers in both states.

Singer -- who eventually resigned from the company and ended up working as an Election Programmer for Tarrant County, where last Tuesday's "glitch" occurred -- wrote of allegations that Hart illegally supplied specially prepared machines for testing to state election officials. Along with doing so, they also withheld a number of known security, programming and hardware flaws during official review and certification of the systems.

**TROUBLE IN TARRANT COUNTY, TEXAS...**

On July 29, 2004 in a letter sent to Texas Secretary of State, Geoffrey S. Conner (**complete letter to Conner in WORD format here**) after Singer witnessed problems in the March 2004 primary in Texas, he opened his letter by summarizing the main concerns:

> Re: Complaint on conduct of election of March 9, 2004, held in Tarrant County, and the associated activities of that office in it's preparation for that election, including inappropriate, unethical, and possibly illegal activities committed by the Office of the Tarrant County Elections Administrator (Robert Parten), and the two election vendors which service Tarrant County, ES&S and Hart Intercivic.

Singer's complete letter to Connor outlines an astonishing litany of remarkably disturbing accusations of improper procedures, concealment of known problems by both Tarrant County and their two vendors (Hart and ES&S), incompetency, unsecured hardware and software development, and much more.

Writes Singer in his letter to the Texas Secretary of State; "What I witnessed at Tarrant County, what I was subjected to, what I was expected to do in order to 'pull off' an election, was far beyond the kind of practices that I believe should be standard and accepted in the election industry and I was baffled by Robert Parten's continued work with these election companies; even after admissions of concealing software problems, inappropriate pressure, hints of backroom deals, and poor support."

Amongst just a few of the many concerns sent to Connor, and apparently ignored by his office, are the following items as described by Singer: (*NOTE: The most damning claims that Singer felt would violate his non-disclosure agreement with Hart were not included in his letters*):

> The audit trail for Hart's election generation software (BOSS) had invalid entries. Hart was aware of this and declined to fix it, and Robert also declined to fix it. I informed him that I had developed a simple, reliable, and effective method to remove the invalid entries (while at Hart), but he still refused to fix the information in the audit database.

> The public test was fake. We ran a public test but discovered a series of problems with the election we were setting up, and in the course of resolving those issues had substantially different election databases to be used in the actual election. I had inquired about rerunning the public test, but was told it was unnecessary, troublesome, and pointless. ... There was also no record of adjustments made for each new iteration of the election databases.

> The Hart technician that arrived onsite in Tarrant County admitted to being untrained, the company declined my offer to help, and instead allowed their untrained technician to make changes to Tarrant's election computers. The work was done improperly and had to be fixed twice, and was only finally completed because I intervened and corrected several problems so that the county could continue preparing for the next election.

> Hart admitted to Tarrant County that votes are sometimes lost when using the disabled voting units

> ES&S was pressuring Tarrant County into using unapproved software for election day, and told the staff there that they were also pressuring other jurisdictions to do the same thing. ... Tom Eschberger, a vice-president for ES&S, was the person who actually came onsite and tried to apply this pressure, and also asked what kind of deal they could offer to get Tarrant County to stop using Hart Intercivic's products.

> There was a computer used to combine results from two separate vendor systems which did not have a password. I attempted to add one, but was ordered by Robert not to, on the grounds that it was a "change". ... This computer was the final reporting

> machine which would be used to generate reports for, among others, the SOS office, the press, and the parties, so the lack of a password was a real concern.
>
> In my work area, where there were several computers used to program the elections, there was no physical security of any kind. I didn't have a closed office much less a lockable door
>
> Anti-tamper devices provided for some of the computers were used improperly or not at all.
>
> Hart did not release bug lists to Tarrant County for their software, and ES&S did so only intermittently and did not respond when I asked for updates
>
> Tarrant County had no organized backups nor any procedure for doing so, nor any regular or safe way to maintain such backups.
>
> During several Tarrant County elections Hart performed on the fly report fixes during elections, even while results were coming in.

Singer concludes the letter to Connor by noting; "As you, and other election officials must be aware, running a complex election is never as simple or easy as the law allows or we would like to believe. And I have recognized these realities in my consideration of the behavior and choices of others, and tried to judge them only on the more severe issues of which I am allowed, under confidentiality agreements, to speak."

### WARNINGS OF HART INTERCIVIC 'FRAUD' SENT TO OHIO'S SECRETARY OF STATE...

The letter to Connor was sent on the same day as another one sent to Ohio Secretary of State, J. Kenneth Blackwell (**complete letter to Blackwell in WORD format here**)outlining a series of concerns which, Singer wrote, "rise to the level of legal/contractual violations."

The letter to Blackwell describes a number of alarming concerns about the electronic voting systems of Hart Intercivic, their gaming of the testing procedures, as well as the conduct of their highest-level officials.

Amongst the series of complaints and concerns contained in the letter to Blackwell are both "Fraudulent Acts" and "Fraudulent Claims" as alleged by Singer.

Amongst the "Fraudulent Acts," Singer writes in his letter to Ohio's Blackwell:

> The computer submitted to the examiners in Ohio for security testing was setup specifically for this test. Since I was the person who actually designed and setup the current configurations I was the only one who could have setup such a computer for the review. Not only was I not permitted to do so, I did not even discover Hart had shipped a computer to the state until after the review had started.

In the "Fraudulent Claims" department, Singer wrote that, despite claims by Hart, storage of votes in the JBC/eState voting system were not random. This design flaw means that under certain circumstances it may be possible to determine how someone voted in violation of the law requiring a secret ballot.

As well, he writes:

> Hart sales staff has claimed to the Ohio SOS office that results are not transmitted over public networks. This is untrue, and indeed, absurd," wrote Singer. "Unofficial results are transmitted through public phone lines, and even mediocre 'hackers' can access such networks via the internet.

The letter to Blackwell includes several other remarkable passages including descriptions of what he "believed to be criminal fraud." Here's one such passage:

> I have been fervently hoping that Hart would decide to step forward and do the right thing; to break the industries habit of silence and concealment, and admit to wrongdoing and apologize for their mistakes.
> ...
> Had this been a handful of rare incidents, where the repercussions were indeed minor, I could have continued to believe that Hart as a company was doing the right thing. I eventually left Hart Intercivic because it became clear to me that the company's silence had little to do with "rare" incidents but instead revealed a number of potentially serious problems which appeared to be systematically hidden or ignored largely for the sake of corporate profits. While at Hart I had evidence of what I believed to be criminal fraud, extreme negligence, and a distinct and troubling pattern of failure to uphold the public trust both in violations of the spirit of its contracts, but also in concealing problems in an industry which so crucially represents the public interest.

**ALL COMPLAINTS WERE COMPLETELY IGNORED...**

"The thing that alarms me more than anything else," Singer told **The BRAD BLOG** in a recent interview, "was that after sending in the complaints to the Secretaries of State, and keeping in mind that there were confidentiality issues here that meant I couldn't disclose the worst of things I saw, neither office even contacted me to find out if there was anything else."

"That was mindboggling, wouldn't you think?"

Indeed neither SoS office replied to Singer's letters which led him to write follow-up letters to the Attorneys General of both Texas and Ohio. Those letters were also met with mostly non-responsive responses. If any.

A major mainstream broadcast news organization who is also currently looking into Singer's complaints has told **The BRAD BLOG** that the Ohio Secretary of State's office "refuses to either confirm or deny whether they even received the letter" -- which Singer says he had sent via certified mail.

"When you look at all of these different problems," Singer told us, "when you look at the whole list, the problems are so diverse and there are so many of them, the thing that comes away is that there's no effective Government supervision. Nobodies minding the store. They won't even investigate the complaints!"

In his followup letters to the states Attornies General offices, he wrote of his repeated attempts to ensure that the TX and OH Sec. of State's offices had received the information and investigated the complaints. The letters were originally notarized and sent via US Mail, he says, and were also sent electronically via email as a follow-up on several occasions.

"Either both offices are guilty of astonishing incompetence in actually losing both letters and email (twice) (that it would occur to 2 government offices, in well funded states with experienced political offices, Texas and Ohio, at the same time beggars the imagination)," Singer wrote to the AG offices. "Or one or both offices is deliberately concealing evidence of these complaints," he concludes.

In a written response to Singer's claim recently obtained (but as of yet unreported) as part of their investigation into this matter by the broadcast network mentioned earlier, Hart InterCivic claims that Singer was a disgruntled employee who had been fired by the company.

Singer responds to that response by calling it "laughable."

"The people that wrote the response was a PR firm. I don't know if they never actually talked to the people at Hart, or if they talked to them and they didn't care about what the truth of their response was," said Singer.

In any case, he says, at the time of his resignation he wrote a letter which disproves the notion that he was fired. "At the time of my resignation," he told us, "I provided several people with my resignation letter, so everyone *knew* that I had resigned and given notice. I wasn't fired."

Further, he claims that given Tarrant County, Texas' extremely close relationship with Hart -- they are apparently one of Hart's very first customers -- they'd not have hired Singer if there had been a previously soured situation with Hart.

"Would Tarrant county have hired me to be their Election Programmer if I had been fired by Hart?," Singer asked.

We hope to follow up this story soon by posting Hart's complete written response, along with Singer's response to it and his complete resignation letter as given to Hart InterCivic at the time he left the company.

For now, what follows are the complete letters as sent by William Singer to both the Ohio and Texas Secretaries of State, warning them of his concerns and dire consequences in July of 2004.

-- **7/29/04 Letter to Geoffrey S. Conner [WORD]**
-- **7/29/04 Letter to J. Kenneth Blackwell [WORD]**

## Comment on This Article
You must **login** to leave comments...

## Other Visitors Comments
There are no comments currently....

**Close Window**

This is **G o o g l e**'s cache of http://news.com.com/2061-10786_3-5390450.html as retrieved on May 16, 2006 22:06:12 GMT.

**G o o g l e**'s cache is the snapshot that we took of the page as we crawled the web. The page may have changed since that time. Click here for the current page without highlighting.

This cached page may reference images which are no longer available. Click here for the cached text only.

To link to or bookmark this page, use the following url: `http://www.google.com/search?q=cache:9HYLfB2B6C4J:news.com.com/2061-10786_3-5390450.html+%22hart+intercivic%22&hl=en&gl=us&ct=clnk&cd=170`

*Google is neither affiliated with the authors of this page nor responsible for its content.*

These terms only appear in links pointing to this page: **hart intercivic**

---

| Today on CNET | News | Reviews | Compare prices | How-to | Downloads |

Today on News | Business Tech | Cutting Edge | Access | Threats | Media 2.0 | Markets | Digital Life     My Nev

Search: [          ]  Go!  Op

# E-voting Hart attack?

September 30, 2004 11:50 AM PDT
The election world's equivalent of the Pentagon papers, or Rathergate II?

BlackBoxVoting.com, a noted critic of closed electronic voting systems and their makers, has released two memos allegedly sent to the secretaries of state in Texas and Ohio by a former technician at e-voting machine maker Hart Intercivic, outlining claims that the company faked tests, falsifed results and exaggerated the security of its

voting machines.

Among the claims in the memos: Hart Intercivic allegedly did not do security testing on the model of computers that are used in the field.

"The allegation in those letters are 100 percent false," said Michelle Shafer, spokeswoman for Hart Intercivic. "The fact that Blackboxvoting.com would post those without contacting us is unfortunate."

The security of electronic voting systems has become a hot topic as the United States closes in on the November presidential elections. The new memos will only add fuel to the fire.

Posted by Robert Lemos

## TalkBack

No discussion exists, click here to start it.

## TrackBacks/PingBacks

See links from elsewhere to this story.

Help Center | Site map | Send us tips | News.com mobile | E-mail newsletters | All RSS feeds | | Linking policy | Co

Today on News | Business Tech | Cutting Edge | Access | Threats | Media 2.0 | Markets | Digital Life        My Nev



Privacy policy | Terms of use | About CNET Networks | Jobs | How to advertise | Partnership opportu
Copyright ©1995-2006 CNET Networks, Inc. All rights reserved.

Other CNET Network sites: BNET | CNET.com | CNET Channel | CNET Download.com | CNET News.com | CNET
International media | MP3.com | mySimon | Release 1.0 | Search.com | TechRepublic | TV.com | Webshots | ZDN

# THE HUFFINGTON POS



## BRAD FRIEDMAN

### Another E-Voting Whistleblower Steps Forward -- This Time Deep in 1 Texas! (9 comments)

*How many more will it take before the Mainstream Media begins to understand -- or at leasl going on here?!*

Continuing in what is -- unfortunately -- a nearly-exclusive BRAD BLOG series of Voting Machine Vend whistleblowers, another insider, from yet another voting machine company, has now come forward to problems inside both the company and in several states and counties with whom they do business.



This time, the whistle is blown in the State of last week's Primary Elections were riddled witl as voting officials and electronic voting machir

Many of those "glitches" occurred on electroni and supplied to various counties in Texas by tl latest whistleblower, William Singer of Fort Wc officials back in 2004 about the impending pro employee.

One such "glitch" occurred in Texas' Tarrant C Worth. That "glitch" resulted in some 100,000 totals across the county's paperless Hart-Inter system. After leaving Hart InterCivic, Singer w Programmer" in Tarrant County.

Given his bona fides then, one would think that letters sent to Texas's Secretary of State and Attorney fraud" within the company and within Tarrant County, might have attracted someone's attention -- or It didn't.

Election Officials in Tarrant claim they didn't look into the problems as they began emerging on Electio reported by the *Star-Telegram*, "they were dealing with a new system, new procedures and some new

The BRAD BLOG can now report, however, that -- according to the letters sent by Singer as long ago a with Hart InterCivic's systems in Tarrant County, Texas and elsewhere are not new at all. Not by a lon

For the complete story on Singer's complaints, ignored by everyone, and the full text of his letters to t Texas and Ohio, see my complete report at The BRAD BLOG.

Then, ask yourself, why the hell I'm virtually the only one reporting on this stuff. I know I ask that sar damned day.

*Brad Friedman is the proprieter and investigative blogger at <u>BradBlog.com</u>. He has been reporting, aln E-Voting Whistleblowers for some time. Amongst them <u>Clint Curtis in Florida</u>, and a Diebold insider kn*

[Search]

Login to Huffington Post | Make Huff Post your Home Page | RSS/XML | Sitemap | Jobs

Copyright 2006 © HuffingtonPost.com, LLC  |  User Agreement  |  Privacy  |  Comment Policy  |  Powered by MovableType

# E-Voting Smoking Gun

By Tom Wright | bio          From: Discussion Tables | 2006 Elections Table

A former employee of Hart InterCivic, now an election worker in Tarrant Co. TX (includes Ft. Worth has detailed problems and errors in Hart machines provided to Texas and Ohio. Reported on The Brad Blog, William Singer has published letters he sent to election officials in Texas and Ohio. The letters were registered so he can prove their receipt, but those officials neither confirm nor deny receipt. Ditto for those states' attorneys-general.

Hart has begun to paint Mr. Singer as disgruntled. Singer counters he resigned in good standing and spread around some copies of his resignation letter at the time. He says he did design work on the systems being used and can speak with authority about problems.

At a minimum, voting systems in two contentious states are unreliable and the responsible officials show no interest in fixing provable problems. However, the loud silence, especially from Ken Blackwell, suggests collusion.

4 comments
Mar 13, 2006 -- 09:18:57 PM EST